ADDISON v. W. E. WOOD CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CONSTRUC-
TION—TOTAL INCAPACITY—LOSS OF FOOT.

Where an employee in the course of his employment sus-
tained an injury to his leg, resulting in total incapacity
for about a year, when his foot was amputated, he is
entitled, under section 9, part 2, of the workmen's com-
pensation act (2 Comp. Laws 1915, § 5439), to compensa-
tion as for total incapacity up to the time of the amputa-
tion, and from that time, under section 10, part 2 (2
Comp. Laws 1915, § 5440), to the specific compensation
provided therein for the loss of a foot, without any de-
duction for payments made during the period of total
incapacity.

Certiorari to Industrial Accident Board. Submitted
May 1, 1919. (Docket No. 35.) Decided October 6,
1919.

Frank Addison presented his claim for compensa-
tion against the W. E. Wood Company for injuries
received in defendant's employ. From an order de-
nying a petition to discontinue payments under an
award, defendant and the Zurich General Accident &
Liability Insurance Company, Limited, insurer, bring
certiorari. Affirmed.

*Kerr & Lacey*, for appellants.
*George G. Hunter*, for appellee.

STEERE, J. On November 5, 1915, Frank Addison,
appellee, suffered an accident while in the employ of
defendant W. E. Wood Company, causing a commi-
nuted fracture of the middle third of both bones of
the lower right leg. It is undisputed that the injury
arose out of and in the course of his employment, and

As to application and effect of Workmen's Compensation Acts
generally, see notes in L. R. A. 1916A, 23 and L. R. A. 1917D, 89.

resulted in at least temporary total incapacity for work.

The customary course of proceedings under the workmen's compensation law was followed promptly and on December 3, 1915, appellant insurance company, representing as insurers the Wood Company, entered into an agreement with Addison for incapacity compensation, on a form prescribed by the industrial accident board, "at the rate of $10 per week during disability," which was filed with and approved by the board.

Immediately after the accident Addison was taken to a nearby hospital for emergency treatment. Dr. A. C. Hall, a specialist in traumatic surgery, acting in behalf of appellants, at once took charge of the case and later removed the injured employee to Harper hospital where he was furnished all needed medical and hospital services, medicine, etc., for approximately one year, during which time he was under Dr. Hall's care and treatment with all expenses borne by defendants, receiving in addition thereto $10 per week from the insurer as provided in their agreement, and a further $5 per week contributed by the W. E. Wood Company. He became dissatisfied with the medical services of Dr. Hall, and, declining to permit further treatment of his injury by him, selected another physician who immediately transferred his patient to a different hospital and soon thereafter amputated the injured member at a point sufficiently below the knee to class the loss as that of a foot. This amputation was performed without the knowledge or consent of appellants, whose medical advice had been that amputation was not necessary. Defendants, however, continued to pay Addison the statutory compensation of $10 per week and $5 per week extra for some time during which negotiations were had and a tentative agreement reached as to compensation, as defendants contend, which Addison later refused to recognize, the

details of which may be omitted, and on July 10, 1918, defendants filed with the industrial accident board a petition to be relieved from paying further compensation beyond two weeks, setting up, which is undisputed, that compensation had already been paid by them under the act for 123 weeks and two additional weeks' compensation tendered with a request for a final receipt for payment on a basis of the loss of a foot, which claimant refused to accept or sign. After hearing the parties the board made an award upon the theory that for the period of 54 1/3 weeks after the accident and prior to the amputation Addison was entitled to receive compensation at the rate of $10 per week for total incapacity, and after the amputation further compensation for 125 weeks at the same rate on the basis of the loss of a foot, making a total of 179 1/3 weeks. From this defendants appeal by certiorari, asking an interpretation of the workmen's compensation act on that proposition.

To summarize the salient facts which raise the question: Addison suffered an accidental injury under which he was paid compensation for total incapacity at the rate of $10 per week for 54 1/3 weeks. Necessarily the payments during that time were under the provisions of section 9, part 2, of the act (2 Comp. Laws 1915, § 5439), as he had lost no members and was totally incapacitated for work. His foot was then amputated and payments at the rate of $10 per week were continued until he had been paid and tendered compensation for 125 weeks, the compensation specified in section 10 (§ 5440) for loss of a foot. The industrial accident board awarded compensation for total incapacity during the 54 1/3 weeks plaintiff was disabled without loss of any member, and after the operation continued compensation during 125 weeks more for loss of a foot.

For defendants it is contended that the one injury which plaintiff sustained resulted in the loss of a foot, entitling him as specifically provided in section 10 to 125 weeks' compensation for such loss, to be computed from the date of the injury as provided in section 3 (§ 5433), the exact time when the foot was amputated having no material significance.

Plaintiff's counsel acquiesces in the award, being "inclined to believe that the board was correct in its interpretation," but, with a reservation directed to the proposition of total incapacity to the maximum period under section 9, also says:

"We are not certain that the industrial accident board arrived at the correct decision in this matter, in awarding compensation to applicant for 54 1/3 weeks as for disability, and for 125 weeks for loss of a foot. We are quite certain that if the board erred at all it erred to the prejudice of applicant."

Part 2 of the act (commencing at section 5431, 2 Comp. Laws 1915) deals with the subject of compensation. Section 4 of that part (§ 5434) provides:

"During the first three weeks after the injury the employer shall furnish, or cause to be furnished, reasonable medical and hospital services and medicines when they are needed."

This section is but incidentally pertinent as it is undisputed that the employer furnished or caused to be furnished to the injured employee what was required in that particular for not only the first three weeks after the injury, but almost a year longer.

The controversy directly involves the construction of sections 9 and 10 of part 2, which are necessarily to be considered both with reference to their relations with each other and the general purpose of the act. First dealing in the matter of compensation with the subject of total incapacity, without particularizing as to the nature of the injury, the legislature provided:

"SEC. 9 (2 Comp. Laws 1915, § 5439). While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee a weekly compensation equal to one-half his average weekly wages, but not more than ten dollars nor less than four dollars a week; and in no case shall the period covered by such compensation be greater than five hundred weeks, nor shall the total amount of all compensation exceed four thousand dollars."

Then passing to the subject of partial incapacity it further provided:

"SEC. 10. (5440) While the incapacity for work resulting from the injury is partial, the employer shall pay or cause to be paid as hereinafter provided, to the injured employee a weekly compensation equal to one-half the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than ten dollars a week; and in no case shall the period covered by such compensation be greater than three hundred weeks from the date of the injury. In cases included by the following schedule the disability in each such case shall be deemed to continue for the period specified, and the compensation so paid for such injury shall be as specified therein, to wit:"

The section then continues with 16 short specifying sub-paragraphs declaring what "shall be" the compensation, measured by weeks and average weekly wages, for loss of various named members, the 14th being, "For the loss of a foot, fifty percentum of average weekly wages during one hundred and twenty-five weeks"; while the last provision of this section directly relating to loss of named members differentiates the two by relegating a double loss to the provisions of the immediately preceding section, which is devoted exclusively to total incapacity, as follows:

"The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof, shall

constitute total and permanent disability,. to be compensated according to the provisions. of section nine."

"Permanent disability" in the connection used can signify in its. application no more than a. conclusive presumption of total incapacity for work as a result of the injury during the maximum number of weeks for which compensation may be awarded under the provisions of section 9. "Disability" and "incapacity" are of like import as found in this act, which does not cover injuries having no tendency to impair the earning capacity of the employee. The purpose and scope of the legislation is directed and limited to providing a measure of compensation, not full but certain, to those incapacitated for work by industrial accidents, to be paid without regard to any of the legal liability tests of the employee's or employer's negligence, assumption of risk or negligence of a fellow-servant. Such award is based on loss of earnings only, rated by previous average weekly wages, a percentage of which is to be paid during a fixed number of weeks made by the act definitely determinable as the facts are found, and limited at longest to 500 weeks. Loss of members is only recognized and provided for as. the same relates to impairment of earning capacity for a definite time. Even if the injury results in death of the employee, continuation of a percentage of deceased's average weekly wages during a maximum period of 300 weeks is the basis and limit of the award to his dependents.

As applied to the facts in the instant case it is. manifest that plaintiff's condition before amputation of his foot entitled him to weekly compensation from the date of his injury for continuing total incapacity under section 9. During that time he had lost no member, and section 10 had no application. Upon the amputation of his foot by a physician of his own selection, Addison's theretofore indeterminate total inca-

pacity, only cognizable under the general provisions of section 9, took definite classification under a specific provision of the succeeding section (10), which is devoted to partial incapacity and specified compensation for loss of named members, the maximum period mentioned in said section being 300 weeks. His disability before that time entitled him to weekly compensation for total incapacity resulting from the accident, to be "computed from the date of his injury." It was so computed and paid, as required by sections 3 and 9, to the maximum amount of weekly compensation authorized by the act until amputation took place. Not until then was the loss of his foot an element in the case. Defendants did not and could not pay him weekly compensation up to that time for the loss of a member which he had not lost. After such loss his disability from the accidental injury resulting in incapacity for work concededly continued, but from that time came squarely under the schedule of losses in section 10. The statute does not in direct words anywhere specify that weekly compensation for loss of a foot or other member must be computed from the date of the injury. Section 3 only requires in general terms that compensation for disability caused by an industrial accident, which continues for 8 weeks or longer, shall be so computed. It was so computed by the board, payable weekly on the maximum basis of half wages through consecutive weeks until terminated by the conclusive presumption which the legislature saw fit to apply to the disability resulting from the injury in its final form. Under section 9 the law does not concern itself with the kind or character of the injury sustained, beyond the inquiry whether it has caused total incapacity to work and earn wages. If total incapacity has resulted, whether temporary or permanent, that section covers the case until further developments. Its application may be terminated by

the maximum period of payment fixed by the statute being reached, by death, full recovery, or such recovery that the injured employee is only partially incapacitated for work, or by the loss of a member. When partial incapacity or single loss of a member as provided in section 10 eventuates, the latter section applies and controls, while a double loss of specified members would remain under and be compensated according to the provisions of section 9 as before pointed out. Section 10, as the last utterance upon the subject to which it relates, controls against any inharmonious provisions of section 9. That such was the legislative intent is indicated by the express provision in section 10 excluding double loss of members from its cognizance and placing such incapacity under the provisions of section 9.

It is within the spirit of the law and does no violence to the wording of the sections under consideration to construe them as authorizing compensation for existing total incapacity resulting from any injury to a member while medical skill is attempting to restore and save the same, and until such time as developments have proved amputation necessary, followed by compensation for the loss of such member during the period fixed by the act after such loss becomes an actuality cognizable under the schedule in section 10. When the schedule provisions of section 10 become applicable, the actual extent and duration of incapacity resulting from the specified injury yield to the indisputable presumption expressly declared in the statute by the legislature, which only obtains in case the member is in fact gone or lost. *Packer* v. *Olds Motor Works*, 195 Mich. 497.

Counsel contend that this construction is at variance with *Limron* v. *Blair*, 181 Mich. 76, wherein it is said that if the injured employee "is in fact disabled by the loss of a foot, or otherwise, for a greater

period than 125 weeks, compensation continues until disability is removed, or the maximum of compensation is paid." That case involved total disability due to other injuries as well as the loss of a foot. In connection with the language stressed by counsel it is also said:

"If one of the results of the accident is the loss of a foot, the period of total disability is 125 weeks, although it may be in fact only 6 weeks. The period is not extended because, as a result of the accident, the employee was in fact totally disabled for a period of 125 weeks, or for any shorter period. * * * The statute speaks in terms of disability. * * * It does not provide a specific indemnity for the loss of a member in addition to compensation for disability. The aim of the statute is to afford compensation if the employee is disabled. When the period of disability ends, compensation ceases."

Manifestly this means the period of disability as fixed and defined by statute, not necessarily the full period of actual disability in fact which may be and sometimes is for life. The disability in terms of which the statute speaks is disability or incapacity for work as recognized, defined and limited by the various provisions of the act. While the statute does not provide specific indemnity for loss of a member in addition to compensation for otherwise caused disability, when an existing disability is, or becomes, defined by and limited to the loss of a member, its thereafter duration and degree, as specified in section 10, are conclusively determined and fixed as total disability, or incapacity for work, during a period of 125 weeks, although it may be in fact only 6 weeks or for life, but if the injured employee is also in fact "otherwise" disabled, compensation could continue until such disability is in fact removed, or in contemplation of law terminated by reaching the maximum time or amount authorized. To construe the law in this class of cases

as limiting compensation to 125 weeks for the loss of a foot would be to retroactively cover under section 10 a period of total disability during which under existing facts the section had no application, and to deny relief under section 9, which, until the member was actually lost, did directly and exclusively apply; while to hold under section 9 that weekly compensation could be awarded for total disability from the date of the injury until the maximum limit of 500 weeks' time or $4,000 compensation was reached, if total disability in fact continued, would be to entirely ignore section 10, which concededly was applicable after the foot was amputated and thereafter defined by statutory presumption the resulting period of total disability and weekly compensation therefor.

The award made by the board in this case does not impose concurrent payments for separate injuries, or disconnected from earning power for any specific injury causing physical impairment. It provides compensation payable weekly for a fixed time during which the employee is actually or presumptively disabled, not any portion of it for loss of a member as such, but, so far as that loss is involved, based on a presumed disability or total impairment of earning capacity for a stated number of weeks after such loss.

We conclude that the construction of the act by the industrial accident board as applied to the facts in this case is permissible within the wording, spirit and inferable intent of the law considered in all its provisions.

The award is therefore affirmed.

BIRD, C. J., and MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.