FRANK ULASKI, APPELLEE, V. MORRIS & COMPANY, AP-
PELLANT.

FILED OCTOBER 14, 1921.   No. 22191.

1. **Master and Servant:** WORKMEN'S COMPENSATION: APPEAL: CON-
FLICTING EVIDENCE. "Where the district court in a workmen's
compensation case finds, on substantially conflicting evidence,
that the employee was injured in a particular manner, such find-
ing of fact will not be reversed on appeal unless clearly wrong."
*Swift & Co. v. Prince,* ante, p. 358.

2. ———: ———: LOSS OF USE OF FINGER. Where the injured em-
ployee suffered 25 per cent. partial permanent loss of the normal
use of the second or middle finger of his right hand, the extent
of the injury not being ascertainable until 10 weeks after the
accident, then he is entitled, under section 3662, Rev. St. 1913, as
amended by section 7, ch. 85, Laws 1917, to compensation for the
period of 7½ weeks at $15 a week, commencing, not with the day
of the accident, but with the day when the extent of the injury
is ascertainable, and, in addition, is entitled to $15 a week for the
10 weeks.

3. **Witnesses:** FEES OF EXPERT. "One testifying as an expert on a
subject requiring special knowledge and skill, in the absence of
a special contract, is entitled only to the statutory fee." *Main v.
Sherman County,* 74 Neb. 155.

APPEAL from the district court for Douglas county:
ARTHUR C. WAKELEY, JUDGE. *Affirmed as modified.*

*James C. Kinsler,* for appellant.

*Bigelow, Peterson & La Violette, contra.*

*Kennedy, Holland, De Lacy & McLaughlin,* amici
curiae.

Heard before MORRISSEY, C.J., ALDRICH, DAY, DEAN,
FLANSBURG and ROSE, JJ.

ALDRICH, J.

On September 11, 1920, Frank Ulaski, an employee of defendant, was injured while in the course of his employment. He was what is called a "beef lugger." On that day he says that a beef fell from an overhead rail, and in catching it a bone sliver was forced into the first joint of the middle finger of the right hand. The defendant's physician administered some iodine and bandaged the finger and he had daily dressings at the doctor's office. In the meantime an infection developed and it became necessary to open the wound. Finally, he was sent home, where he stayed during the succeeding week and two days. He was treated daily by the company physician and his finger was repeatedly lanced. He returned on September 29, under direction of the company's physician, and was assigned a lighter task in which he did not have to use the injured finger.

On October 1, he was called to the office and given a check for $5 to cover his compensation for two days, the 27th and 28th of September, the first week being exempted by law. He signed a release; and then returned to work and was required to do work that necessitated the use of his finger. He told the foreman he could not do that work because of his sore finger. An altercation ensued and he was permanently discharged. This discharge occurred about two hours after he had signed the release, and, notwithstanding his discharge, he was treated by the company physician for several days afterwards. Later, while his finger was still swollen and open, the company physician refused him further treatment. It was on October 7 that he was refused further compensation, and then he went to the compensation commissioner, who informed the company's claim agent and told him that Ulaski was at that time entitled to a week's compensation. Ulaski then went to the company's office and was paid the sum of $15, and was required to sign two releases. His finger was at that time still sore and swollen. He returned to the defendant company on

Ulaski v. Morris & Co.

November 16, seeking work. The defendant company had not at that time begun to lay off men, although they refused him employment. It is claimed that plaintiff was not yet in condition to work and was not able to use the knife. Even at this time his finger was in such a condition that he was unable to work and was forced to quit after shoveling coal a few hours. January following he applied for compensation and was awarded a hearing and was allowed additional compensation. Upon a hearing in the district court being had, the trial court, among other things, held that "the plaintiff have and recover from the defendant company, in addition to the sum already paid, compensation at the rate of $15 per week for a period of 17½ weeks, all of which is now due and payable forthwith; that the defendant company be and it is hereby ordered to pay to plaintiff the sum of $75 for attorneys' fee in this court, and to pay to the plaintiff for expert witness fees charged as costs the sum of $50, and to pay into court the costs of this suit; that, unless said payments are made forthwith, the defendant shall also pay 50 per cent. of the said compensation for 17½ weeks as the statutory waiting time." From the judgment so rendered the defendant appealed.

In *Swift & Co. v. Prince, ante*, p. 358, the court said: "The trial court saw the witnesses and heard their testimony, and its findings, upon conflicting evidence, should not be disturbed. It is the rule in cases of this kind that findings of fact, supported by sufficient evidence, or findings of fact on substantially conflicting evidence, will not be reversed unless clearly wrong." The rule announced in the *Prince* case is applicable to the facts before us and we adhere thereto. The finding of fact is amply supported by the record. The court was justified in allowing Ulaski 10 weeks for total disability in addition to the week and two days formerly allowed by the court under the finding of fact.

The record shows conclusively that plaintiff was allowed 10 weeks' compensation for time lost dating from

October 7, 1920.   After he had rested and had had time to make improvement it was further found that he had lost 25 per cent. of the normal use of his injured finger.   His loss altogether, then, was 10 weeks for total disability and 7½ weeks for permanent partial loss of the finger, making a total loss of time of 17½ weeks at $15 a week, as provided by statute.   The defendant refused to pay the award as made by the compensation commissioner. Then the case was tried in the district court and the decision of the compensation commissioner affirmed.

As appears of record there was total disability of 10 weeks, and according to the spirit and intent of the statute the plaintiff was entitled to a recovery of $15 a week pending that time, and to a permanent partial disability for a period of 7½ weeks.   This in the aggregate constitutes the total loss of the plaintiff for the entire time of the injury, and we concur in the finding of the court in this regard as it is amply sustained by the record. This case is not unlike the principle found in *Addison v. Wood Co.*, 207 Mich. 319.   The principles of the statute as applied to this case are fully discussed and the application of the law which we follow is made.   We adhere to the principle of law therein involved.   It is in point in the instant case.   We believe the court was right in allowing a total disability for a period of 10 weeks and was correct in allowing permanent partial disability at the rate of $15 a week.   The requirements of the statute have been amply complied with and the court has met the situation as shown in plaintiff's case.

We are not unmindful of the fact that in the discussion and conclusion of the instant case there are cases holding a different principle and conclusion from what we have arrived at, but at the same time we believe that our conclusion has the support of law and does ample justice to the parties under these facts.

On the question of attorney's fees, section 3666, Rev. St. 1913, as amended by chapter 85, Laws 1917, and chapter 91, Laws 1919, provides as follows: "Whenever

the employer refuses payment, or when the employer neglects to pay compensation for thirty days after injury, and proceedings are had before the compensation commissioner, a reasonable attorney's fee shall be allowed the employee by the court in the event the employer appeals from the award of the commissioner and fails to obtain any reduction in the amount of such award; the appellate court shall in like manner allow the plaintiff a reasonable sum as attorney's fees for the appellate proceedings." The $75 so allowed by the trial court is correct and just and we affirm it. It follows that defendant must pay the costs of this suit.

There is, however, no provision in the law for the payment of expert witness fees. The expert witnesses are therefore allowed the usual and lawful witness fee, and no more. *Main v. Sherman County*, 74 Neb. 155.

The judgment of the district court is affirmed, except as modified herein. It is ordered that the court disallow the expert witness fee in the amount of $50, and that the expert witness recover only the usual and lawful witness fee; and that defendant receive credit for one and one-third weeks' compensation which defendant has already paid on plaintiff's claim. It is further ordered that defendant pay an attorney fee for plaintiff, as costs in this court, in the sum of $100.

AFFIRMED AS MODIFIED.