Clara KELTING, Claimant (Plaintiff), Appellant-Respondent,

v.

COLUMBIA BREWING COMPANY, Employer, and Hartford Accident & Indemnity Company, Insurer (Defendants), Respondents-Appellants.

Nos. 29522, 29523.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1956.

Motion for Rehearing or for Transfer to Supreme Court Denied Nov. 13, 1956.

Bartley & Bartley, Ralph H. Schnebelen, St. Louis, for appellant-respondent.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondents-appellants.

WOLFE, Commissioner.

This is an appeal by the claimant and the employer and its insurer from a judg-ment of the circuit court affirming an award of the Industrial Commission of Missouri. The award allowed the claimant compensation at the rate of $20 a week for 293½ weeks. This totaled $5,871.43 and was subject to a credit of $1,960, which had been paid by the employer, and left a balance of $3,911.43 due the plaintiff.

The facts of the matter are that Charles Kelting, husband of the claimant, dropped a case of beer on his left foot. He suffered a fracture of the big toe, the little toe and some superficial laceration of the right shin. This happened on October 10, 1946. Osteomyelitis set in the bones of the left foot and, Kelting was sent to numerous medical specialists. Various efforts were made to check the infection but all of these failed. On March 3, 1947, an amputation was performed on part of his foot. The infection continued and after other efforts failed, on August 17, 1950, his left leg was amputated at the lower portion of the mid-third of the thigh. By June 5, 1951, the stump of the leg had healed and an artificial limb had been made for him. He would have been able to work at that time except for the fact that he was suffering from another disability. During the night of March 3, 1947, the date of the first amputation, Kelting started to have hiccoughs. The hiccoughs were persistent and aggravating. He was periodically given medicine which brought temporary relief but at the time his leg was amputated, in August of 1950, the hiccoughs still persisted and an examination revealed that he suffered from esophageal hiatal hernia.

It was explained that the esophagus passes through the diaphragm to the stomach and the opening in the diaphragm through which the esophagus passes is called the esophageal hiatus. When the esophageal hiatus becomes larger than necessary for the esophagus to pass through, the upper portion of the stomach may go up through the opening into the chest cavity. This constitutes the hernia. Hiccoughs are

caused by a spasmodic movement of the diaphragm.

After the amputation of the leg the hiccoughs continued and in May of 1951, Kelting underwent an operation at the Veterans Hospital for the correction of the esophageal hiatal hernia. This did not relieve him and he was again operated on in 1952 and again in 1953. On March 18, 1953, he died from bronchial pneumonia.

One physician, testifying on behalf of the claimant, stated that the hiccoughs were caused by the operation and that they caused the hernia. Another, testifying on behalf of the employer, stated that they were not caused by the operation but by an existent hernia. Two others stated that it was not possible to determine what caused the hiccoughs.

The widow of Kelting is the claimant here and she now asserts no claim for her husband's death but she did ask compensation for 388 weeks of temporary total disability. This would be the time between the date of the accident and the date of the death. The rate of compensation was $20 per week and it was subject to the credit of $1,960 paid by the employer. The referee made an award of compensation for 160 weeks, which is the amount fixed for permanent partial disability resulting from the loss of one leg at or above the knee where the stump remains sufficient to permit the use of an artificial limb. The amount so awarded was $3,200 and it was subject to the above mentioned credit of $1,960 paid by the employer.

The claimant appealed from the award and upon review by the full Commission there was a finding that Kelting sustained temporary total disability from October 10, 1945, to June 5, 1951, the latter date being the day Kelting was examined by a Dr. Hampton, who found that the stump had healed. This finding resulted in an award of compensation for 295⅞ weeks at $20 a week, or a total of $5,908.57, less the credit of $1,960.

The employer and the insurer appealed and contend that the Commission erred in awarding any sum larger than that fixed by Section 287.190 RSMo 1949, V.A.M.S., which deals with permanent partial disability and fixes the amount allowable for such disability at 160 weeks when it results from the loss of a leg above the knee.

The claimant asserts that the award should have extended over the entire time of disability from the date of the accident up to the date of death. She maintains that the disabling hiccoughs from which Kelting suffered up to his death were shown to have been caused by the amputation and that the award therefore is not supported by competent substantial evidence.

■ As far as the contention of the claimant is concerned, it is true that there was medical testimony to support her claim that the hiccoughs had their origin in the operative procedure at the time of the first amputation. It is also true that there was evidence that they originated from the hernia and that they were in no way connected with the operation. The province of this court upon review is to determine whether or not the Commission could have reasonably made its findings and reached its conclusions upon consideration of all of the evidence before it. We should set aside decisions clearly contrary to the overwhelming weight of the evidence, but we cannot substitute our judgment on the evidence for that of the Commission. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55. The evidence that the hiccoughs were not related to the operation was competent and substantial evidence from which the Commission could find that they resulted from the hernia alone, and in view of this we cannot direct that the award should cover the period of disability resulting from hiccoughs.

The employer's and insurer's contention that the claimant was limited by Section 287.190 RSMo 1949, V.A.M.S., to an allowance of 160 weeks rests upon their construction of that section. The language upon which they rely is as follows:

"Permanent partial disability—compensation for various injuries—how computed

"1. For permanent partial disability, in lieu of all other compensation, except that provided under section 287.140 of this chapter, the employer shall pay to the employee sixty-six and two-thirds per cent of his average earnings as computed in accordance with section 287.250, but not less than eight dollars nor more than thirty dollars per week, for the periods herein provided."

Then follows a list of injuries with the number of weeks of compensation to be allowed for each. The 34th on the list is "Loss of one leg at or above the knee, where the stump remains sufficient to permit the use of artificial limb 160 weeks". Section 287.140, mentioned in the first paragraph, has to do with medical benefits and with that we are not concerned. It is maintained that the words "in lieu of all other compensation" precludes any allowance for temporary total disability such as the long period of hospitalization and treatment that the employee in this case was obliged to undergo before the actual amputation.

The section relating to temporary total disability, 287.170, is as follows:

"For temporary total disability the employer shall pay compensation for not more than four hundred weeks during the continuance of such disability, but not less than eight dollars nor more than thirty dollars a week, with full wages if the average earnings amount to less than eight dollars a week."

In support of the employer's and insurer's position they cite Reay v. Elmira Coal Co., 225 Mo.App. 102, 34 S.W.2d 1015. In that case the employee sought an award under both the permanent partial disability section and the temporary total disability section, and the court held that an award under both sections was erroneous as the words "in lieu of all other compensation" excluded temporary total disability.

These appellants also offered in evidence two bills which had been introduced in the General Assembly but failed to pass. These bills provided that the words "in lieu of all other compensation" should be substituted with the words "in addition to all other compensation". The bills were offered in evidence with the idea that they indicated legislative construction of the words "in lieu of".

In addition to the case of Reay v. Elmira Coal Co., 225 Mo.App. 102, 34 S.W.2d 1015, there are cases from other jurisdictions holding that the employee cannot recover under both sections where the permanent partial disability clause states that it is in lieu of all other compensation. Georgia Casualty Co. v. Jones, 156 Ga. 664, 119 S.E. 721; Kramer v. Sargent & Co., 93 Conn. 26, 104 A. 490; Moses v. National Union Coal Mining Co., 194 Iowa 819, 184 N.W. 746.

It is also true that the same clause has been construed in other jurisdictions to allow compensation both for the period of total disability and permanent partial disability. Smith & McDannald v. State Industrial Commission, 133 Okl. 77, 271 P. 142; Crawford v. Virginia Iron, Coal & Coke Co., 136 Va. 266, 118 S.E. 229; Addison v. W. E. Wood Co., 207 Mich. 319, 174 N.W. 149; Chamberlain v. Bowersock Mills & Power Co., 150 Kan. 934, 96 P.2d 684, 129 A.L.R. 654; Olson v. Griffin Wheel Co., 218 Minn. 42, 15 N.W.2d 511, 156 A.L.R. 1338. Some of these cases hold that the language used in the statute is to prevent "pyramiding of compensation", so that one could not recover the

scheduled amount for the loss of a finger and also be awarded compensation for the partial loss of the use of the hand. Chamberlain v. Bowersock Mills & Power Co., supra. Others hold that the permanent partial disability section does not state when the weeks of compensation shall begin so they fix it at the time of the amputation and allow temporary total disability up to that time. Crawford v. Virginia Iron, Coal & Coke Co., 136 Va. 266, 118 S.E. 229, supra; Addison v. W. E. Wood Co., 207 Mich. 319, 174 N.W. 149, supra.

It should be noted that all of the above cases deal with situations where an award was made under both sections of the statute for one accident. This is also true of the case of Reay v. Elmira Coal Co., 225 Mo. App. 102, 34 S.W.2d 1015, upon which the employer and the insurer rely. Whether or not the results reached in Reay v. Elmira Coal Co. were correct may be open to question in view of considerable authority to the effect that "in lieu of all other compensation" means in lieu of all other compensation for permanent partial disability, which is the subject of the section. But the case is of no aid to the employer's contention in the matter before us if we accept it as a proper construction of the statute. The reason for this is that the whole Workmen's Compensation Statute is designed to pay for the loss of earning power occasioned by the injury and it must, by its terms, be liberally construed. There is nothing in it that limits the claimants to one section or the other.

██ To construe it as the employer and the insurer would have us do, we would have to read into the section on permanent partial disability words indicating that any injury resulting in an amputation could be compensated solely by the schedules. Under this construction one might suffer from a totally disabling infection for 400 weeks and if the end result of the disability was the amputation of a toe at the first joint, he would get only 8 weeks compensation. Such an absurd result would do violence to the whole act. Such a construction is repugnant to the purpose of the act and could not have been intended by the Legislature and it should not be so construed.

For the reasons stated, it is the recommendation of the Commissioner that the judgment of the circuit court affirming the award of the Commission be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court affirming the award of the Commission is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and ELMO B. HUNTER, Special Judge, concur.