IRA O. PEEK, APPELLANT, v. AYRES AUTO SUPPLY, APPELLEE.

57 N. W. 2d 387

Filed February 1, 1952. No. 33074.

*Armstrong & McKnight,* and *Paul P. Chaney,* for appellant.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

In this case plaintiff appealed from a judgment rendered by the district court in the trial de novo of a workmen's compensation case, as directed in a. former opinion of this court, reported as Peek v. Ayres Auto Supply, 153 Neb. 239, 44 N. W. 2d 321. The trial court found, and it is conceded that on May 1, 1946, plaintiff, a salesman for defendant, sustained personal injuries arising out of an automobile accident which occurred in the course of his employment by defendant. Concededly, also, plaintiff was employed by defendant from September 10, 1945, to May 1, 1946, and was paid $1,155 salary plus $32.55 commissions, or a total of $1,187.55 during such period. It will be observed, therefore, that during such period of 33.17 weeks plaintiff earned $35.80 a week.

The trial court found and adjudged that plaintiff should recover $18 a week for 105 weeks from and after May 1, 1946, for temporary total disability; that thereafter he should recover $13.50 a week for 175 weeks for 75 percent temporary partial disability; and that thereafter plaintiff should recover $18 a week for 17½ weeks *"for 50% loss of right ear."* (Italics supplied.) In that connection, there is no disagreement with reference to loss of plaintiff's ears, and the aforesaid italicized lan-

guage concededly should be corrected to read: "for 50% loss of his left ear and 20% loss of his right ear," in order to conform with the evidence and applicable statute, section 48-121 (3), R. S. Supp., 1951. Concededly, also, defendant was properly given credit for $1,350 compensation already paid by defendant.

Further, it was ordered and adjudged that plaintiff should recover $350 traveling expenses to and from his home for medical treatment and that he should be reimbursed for certain medical and hospital expenses paid by plaintiff. Also, defendant was given credit for certain medical and hospital expenses already paid by it, and was required to pay certain others.

In this court plaintiff substantially assigned that: (1) The findings of fact are not conclusively supported by the evidence as disclosed by the record; (2) the trial court erred in failing to find that plaintiff was entitled to compensation for total and permanent disability; (3) erred in computing the compensation due plaintiff for 175 weeks for 75 percent temporary partial disability at $13.50 a week in that the findings of fact do not support such an award; and (4) erred in its findings and judgment for medical and travel expenses, and in its failure to find that plaintiff needed further medical services for which defendant should be liable. With regard to such assignments, we conclude that the first should be sustained, and in a trial de novo sustain the third and fourth, but do not sustain the second.

Defendant cross-appealed, assigning that the trial court erred in allowing any temporary partial disability. We conclude that the assignment should not be sustained.

At the outset of this appeal, defendant contended that since plaintiff filed no motion for new trial, this court was limited to an examination of the pleadings to determine whether or not the judgment was responsive thereto. Consequently, defendant argued that the judgment must be affirmed without a trial de novo, on the record. We conclude that such contention has no merit.

A compensation case is a civil action, equitable in character, and so triable by this court on appeal. Lincoln Packing Co. v. Coe, 120 Neb. 299, 232 N. W. 92. We have concluded that such is ordinarily true whether the action was tried in the district court under section 48-181, R. S. 1943, or section 48-182, R. S. 1943. Solheim v. Hastings Housing Co., 151 Neb. 264, 37 N. W. 2d 212.

As stated in Meester v. Schultz, 151 Neb. 614, 38 N. W. 2d 739: "All of the provisions of our Civil Code are applicable and controlling in a workmen's compensation case as they are in any other civil action equitable in nature. See Chilen v. Commercial Casualty Ins. Co., 135 Neb. 619, 283 N. W. 366." See, also, Schmidt v. City of Lincoln, 137 Neb. 546, 290 N. W. 250.

Further, this court has concluded that the filing of a motion for new trial is not necessary in order to obtain review of a workmen's compensation case upon the merits in this court. Hansen v. Paxton & Vierling Iron Works, 135 Neb. 867, 284 N. W. 352.

In the light of the foregoing, the applicable rule, as in equity cases, must be that in order to review errors of law which allegedly occurred during the trial of a workmen's compensation case, a motion for new trial must be timely filed, assigning such errors therein, and they must also be subsequently assigned and discussed in the brief filed in this court on appeal, or they will not ordinarily be considered. Oertle v. Oertle, 146 Neb. 746, 21 N. W. 2d 447; Hartman v. Hartmann, 150 Neb. 565, 35 N. W. 2d 482. However, we are not presented here with any such alleged errors of law.

Rather, plaintiff's assignments depend for solution and decision entirely upon a review of the evidence appearing in the record and statutes applicable thereto. In such a situation a motion for new trial is not a necessary prerequisite in order for this court to search the record, try the case de novo thereon, and render such judgment as should have been rendered. Werner v. Nebraska

Power Co., 149 Neb. 408, 31 N. W. 2d 315; Beam v. Goodyear Tire and Rubber Co., 152 Neb. 663, 42 N. W. 2d 293.

By stipulation, all evidence adduced at the first trial, which began on November 1, 1949, was received in evidence at a further hearing on December 19, 1950, after the judgment had been reversed and the cause had been remanded for trial de novo, whereat, by stipulation, additional evidence was adduced by both parties.

When the accident occurred, plaintiff was driving a Chevrolet two-door sedan furnished by defendant. At the crest of a hill he swerved right to avoid an on-coming car in his lane of travel. His car then went out of control, from one side of the highway to another, and turned over several times, throwing plaintiff's head out through the windshield and back again. Whether or not he was rendered unconscious for any period of time after the accident is conjectural. In any event, when plaintiff was able, he attempted to flag down several cars without success, until eventually two men who knew him stopped and took him to a hospital at Auburn. There two physicians were called, who administered surgical and medical treatment. After the accident, it was found that 50 percent of plaintiff's left ear and 20 percent of his right ear had been completely severed. He had a long deep cut from back of his right ear downward across his jaw, almost half way to the corner of his mouth. His head was swollen and aching. Both sides of his face were numb, some of his teeth were loosened, his jaw ached, and would not open and shut as it should. One knee was slightly cut and bruised, and his lower back ached. He was confined in the hospital 15 days, after which he returned to his home in Auburn. There he remained bedfast for several weeks, and was treated by a local physician for several months. Although plaintiff had an unsightly disfigurement and the foregoing disabilities, it was thought that he was slowly convalescing and would be back at work in a few weeks. However, adhesions closed his ear canals,

causing them to become infected for want of drainage, and almost destroyed his hearing. In addition, his original symptoms were aggravated by fatigue, nervousness, and insomnia, and at time of trial he had not yet attempted to obtain employment, although it appears that prior thereto he was physically able to have been employed part time.

On August 19, 1946, defendant's insurance carrier sent plaintiff to a physician in St. Joseph, Missouri, who found some of such symptoms, and advised plastic surgical restoration of plaintiff's ear canals. Thereafter, in December 1946 and in January and February 1947, three more of defendant carrier's physicians and surgeons from Kansas City and Omaha made like recommendations, but nothing was done about it until between April 4 and April 19, 1947. During that period he was taken to a hospital where a plastic surgeon performed an operation on plaintiff's left ear with favorable results. Thereafter, on April 23, and again on May 17, 1947, physicians employed by defendant's carrier examined plaintiff and re-examined his left ear, whereat they reported that plaintiff should return to work on June 1, 1947. He complained that he was unable to do so, however, and between January 16 and January 24, 1948, plaintiff was again placed in a hospital by defendant's carrier where plastic surgery was performed upon his right ear with favorable results. Two days thereafter his compensation was stopped.

In March 1948 plaintiff employed two physicians of his own, who, after examination and treatment, were of the opinion that plaintiff had suffered a brain injury with resulting traumatic encephalitis and post-traumatic neurosis, which at time of trial they were of the opinion had caused plaintiff to suffer a 60 to 75 percent permanent partial disability. They testified, however, that plaintiff had improved and further medical treatment would not be curative but only palliative, by the administration of heat and prescription of vitamins. There

is no medical evidence which could sustain a finding of total permanent disability.

In that connection, the Mayo Clinic examined plaintiff and on April 12, 1950, among other things, reported that he had: "a traumatic neurosis with a major symptom of mild depression associated with insomnia * * * and suggested psychiatric aid if his nervous symptoms showed no sign of amelioration." It should be noted, however, that they found other disabilities which were not caused or aggravated by the accident.

In the meantime, defendant carrier had plaintiff examined by several physicians and neurologists, one of whom diagnosed plaintiff's disability as "post traumatic neurosis," with possibility of some organic brain damage, despite the fact that recognized medical tests negatived that conclusion. Others reported no objective symptoms of disability by X-ray or otherwise, except plaintiff's ears, and one adhered to his testimony that plaintiff had no disability except his ears, which were recovered by June 1, 1947, when plaintiff was allegedly able to return to work, despite the fact that a plastic operation was performed with his knowledge and upon his recommendations as late as January 1948.

We are not unmindful that the trial court observed plaintiff, as well as some of the physicians and other witnesses who testified during the trial, whose testimony was in irreconcilable conflict on material questions of fact. Therefore, after an examination of all the evidence, including that given by at least 12 physicians and surgeons in addition to a report from the Mayo Clinic, we conclude, as the trial court did, that plaintiff was not totally and permanently disabled, but did sustain a 75 percent temporary partial disability in addition to the 105 weeks of temporary total disability and 17½ weeks for loss of plaintiff's ears.

In that connection the law in force at the time of the accident, section 48-121, R. S. Supp., 1945, as applicable here, provided in part: "For disability partial in

character, except the particular cases mentioned in subdivision (3) of this section (applicable for loss of plaintiff's ears), the compensation shall be sixty-six and two-thirds per cent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter, but such compensation shall not be more than eighteen dollars per week. This compensation shall be paid during the period of such partial disability; not, however, beyond three hundred weeks after the date of the accident causing disability. Should total disability be followed by partial disability, the period of three hundred weeks mentioned in this subdivision shall be reduced by the number of weeks during which compensation was paid for such total disability."

The wages received by plaintiff were $35.80 a week. With a 75 percent temporary partial disability, plaintiff's earning power would be 25 percent of $35.80, or $8.95 a week, which, subtracted from $35.80, leaves a difference of $26.85. As a result, 66⅔ percent of such difference would be $17.90, the proper weekly rate which plaintiff was entitled to receive for a period of 175 weeks for temporary partial disability. In other words, plaintiff was entitled to recover for 105 weeks temporary total disability at $18 a week, plus 175 weeks at $17.90, instead of $13.50 a week, for 75 percent temporary partial disability, plus 17½ weeks at $18 a week for 50 percent loss of his left ear and 20 percent loss of his right ear.

At the hearing on December 19, 1950, the plaintiff was admittedly improved and no necessity for further surgical or psychiatric treatment was shown. In Paulsen v. Martin-Nebraska Co., 147 Neb. 1012, 26 N. W. 2d 11, this court held: "Where the evidence discloses that further medical, hospital, and surgical services would not definitely improve the condition of an injured employee, and where such improvement would be conjectural, the employer's liability under section 48-120,

R. S. 1943, to furnish reasonable medical and hospital services and medicines, as and when needed, ceases." Therefore, in the light of the evidence and such rules, we conclude that defendant should not be required to furnish plaintiff any future medical and hospital services. The trial court correctly refused to enter such an order.

On the other hand, defendant was given credit for payment of certain medical and hospital bills, was required to pay certain of such bills then unpaid, and was required to reimburse plaintiff for certain such bills paid by him. In addition thereto, we conclude that the trial court should also have required defendant to reimburse plaintiff for an additional $278.48, composed of the following items: $43.48 for medicine purchased and paid for at Cline's Drug Store; $18 for medicine purchased and paid for at Witt Drug Store; and $217 paid by plaintiff for medical services at Mayo Clinic, Rochester, Minnesota.

In that connection, plaintiff contended that the trial court erred in directing defendant to pay one of his physicians only $478. Such contention has no merit. An examination of the claim discloses that $200 thereof was for witness fees at $100 a day. In that connection, the rule is: " 'One testifying as an expert on a subject requiring special knowledge and skill, in the absence of a special contract, is entitled only to the statutory fee.' Main v. Sherman County, 74 Neb. 155." Ulaski v. Morris & Co., 106 Neb. 782, 184 N. W. 946.

In its decree the trial court ordered defendant to reimburse plaintiff in the amount of $350 for necessary expenses in traveling to and from his home for medical treatment. We conclude that such amount should have been for a total of $831.85, as contended by plaintiff.

For the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed in part, and reversed in part, and the cause is remanded with directions to enter a judgment for

plaintiff in conformity with this opinion. Costs are taxed to defendant.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.