VIVIAN HEFTI, APPELLANT, V. HARVEY HEFTI, APPELLEE.
88 N. W. 2d 231

Filed March 7, 1958. No. 34317.

*Leamer & Graham,* for appellant.

*Philip H. Robinson* and *Hutton & Hutton,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, and BOSLAUGH, JJ.

CHAPPELL, J.

On November 19, 1956, plaintiff, Vivian Hefti, was granted an absolute divorce from defendant, Harvey Hefti, and was awarded the care, custody, and control of their daughter, who was born March 18, 1956, together with temporary allowance for their support until further order of the court. Thereafter, on July 8, 1957, a supplemental decree was rendered which granted plaintiff $2,500 permanent alimony, payable $50 a month beginning August 1, 1957, and continuing each month thereafter until paid in full, and also allowed plaintiff $50 a month for child support beginning August 1, 1957. Thereafter, plaintiff's motion to vacate the decree rendered July 8, 1957, and grant a new trial or to modify said decree by materially increasing the amount allowed as permanent alimony and support money, was overruled and plaintiff appealed.

In doing so, plaintiff assigned substantially that under the evidence and applicable law, the trial court erred as follows: (1) In granting plaintiff only $2,500 as permanent alimony and in restricting payment thereof to $50 a month; (2) in allowing plaintiff only $50 a month as child support; and (3) in assessing costs. Those are the sole questions presented here, and we sustain the first assignment.

With regard to the third assignment, plaintiff argued that the trial court erred in refusing to assess as costs $25 paid by plaintiff as a witness fee to a physician whose deposition was taken by plaintiff and used in the trial. In Peek v. Ayres Auto Supply, 155 Neb. 233,

51 N. W. 2d 387, citing authorities, we reaffirmed that: "A witness who testifies as an expert on a subject requiring special knowledge and skill is, in the absence of a special contract, entitled only to the statutory fee." In Ulaski v. Morris & Co., 106 Neb. 782, 184 N. W. 946, we said: "There is, however, no provision in the law for the payment of expert witness fees. The expert witnesses are therefore allowed the usual and lawful witness fee, and no more. Main v. Sherman County, 74 Neb. 155." In that connection, only the usual and lawful witness fee for the physician involved should be assessed as costs herein, as provided by section 33-139, R. R. S. 1943. The third assignment should not be sustained.

We turn then to the first and second assignments, which will be discussed and disposed of together. In that connection, we increase plaintiff's award of permanent alimony and the monthly payments thereof as hereinafter set forth, but we do not increase the allowance for child support because the child is now less than 2 years old and the allowance appears to be adequate at this time. In other words, we sustain the first assignment but do not sustain the second.

It is elementary that such cases are triable de novo upon appeal to this court, and that the amount of alimony and support money awarded the wife will be increased or diminished by this court on appeal therefrom when all the facts and circumstances establish that the amounts awarded by the trial court are not just and reasonable. In that respect, the many factors and elements which should be considered by the court in granting alimony and awarding support money require no repetition here. They have been heretofore announced and reaffirmed in such cases as Workman v. Workman, 164 Neb. 642, 83 N. W. 2d 368; Koerwitz v. Koerwitz, 162 Neb. 411, 76 N. W. 2d 264; Eno v. Eno, 159 Neb. 1, 65 N. W. 2d 145; Strasser v. Strasser, 153 Neb. 288, 44 N. W. 2d 508.

Also, in Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173, we held: "Although the statute provides that the wife shall be allowed alimony out of the husband's estate in such an amount as the court shall deem just and reasonable, having regard to the ability of the husband, his earning capacity is an element to be considered and, in a proper case, the allowance of permanent alimony may exceed the value of the husband's estate at the time the marriage is dissolved.

"The amount of alimony to be granted a wife is not to be determined alone from the property possessed by the husband. Many other factors enter into the determination such as the husband's age, health, earning capacity, future prospects, and social standing." We reaffirmed the foregoing rule in Eno v. Eno, *supra.*

Also, in DeVore v. DeVore, 104 Neb. 702, 178 N. W. 621, we held: "In entering a decree for alimony, the court may take into account all of the property owned by the parties at the time of entering the decree, whether accumulated by their joint efforts or acquired by inheritance, and make such award as is proper under all the circumstances disclosed by the record." See, also, Strasser v. Strasser, *supra.*

In that connection, the granting of alimony and the allowance of support money in divorce actions is always determined by the facts and circumstances in each case relating to and in accord with the many factors and elements heretofore announced by this court.

In the light of such rules, we have examined the record. The parties were married on December 2, 1951. Thereafter, for some 10 months they lived with defendant's parents near Coleridge on a 280-acre farm owned by defendant's father. At the end of such period defendant's parents left that farm and moved to Coleridge, but plaintiff and defendant continued to live there together without any serious marital difficulties until after their daughter was born.

At the time of marriage plaintiff was a farmer's

daughter, with an eighth-grade education. Her earning ability was and is limited to being a domestic and baby sitter. She had no real estate and owned no personal property of any consequence at the time of marriage. During the marriage plaintiff cooked, kept a clean house, did chores, and assisted defendant as a farmer's wife ordinarily does until their only child was born in a Norfolk hospital. Six days thereafter plaintiff returned to the farm in a weakened physical condition and faced with the responsibilities of a farmer's wife and an inexperienced mother with her first baby. She was then unable to efficiently assume those responsibilities, and serious marital difficulties occurred, whereupon, as a result thereof and as a result of a previous illness and her pregnancy, plaintiff had a nervous breakdown and was removed to a hospital for 13 days. During such period and thereafter, defendant's parents took charge of plaintiff's baby, and upon her recovery and return from the hospital to the farm, they retained custody of the baby, at defendant's instigation, until after this action was filed. In the meantime, defendant's unjustifiable extreme cruelty, which was established by plaintiff's testimony, amply corroborated by other competent evidence, compelled plaintiff to leave defendant and the farm in June 1956, and this action was filed July 11, 1956.

At time of trial, plaintiff was 31 years old and in good health but without employment or funds except temporary allowances made therefor by the court with which to support herself and child, whose custody and care required constant attention.

At time of marriage and ever since, defendant and his father farmed 280 acres of land near Coleridge as equal partners. Each owned his own machinery. However, defendant's father owned the land which had been conveyed to him by defendant's uncle, but defendant and his father were required to pay the uncle $400 a year as rental, and pay the taxes on the land. At time of

marriage, defendant owned no real estate, but in 1953 he acquired 154 acres of land by inheritance from his grandfather. Such land had no improvements upon it except a corncrib, windmill, and hog house, but the land was free of encumbrance and then appraised at $15,270. At time of trial and theretofore as well, defendant had rented that land to a tenant on a two-fifths crop-share basis. At the trial a real estate agent, called as a witness by defendant, testified that the market value of such land was between $100 and $125 an acre, which would be a value of $15,400 to $19,250. He testified that it was worth more than some farms he had sold because it was on the highway and in the Coleridge school district. In that connection, plaintiff's witness, a neighbor, testified that such land was worth $150 an acre, which would be a value of $23,100.

At time of marriage defendant had about $1,400 in the bank and owed no debts. He then owned certain described farm machinery and two Ford cars, for all of which he had paid $3,107. Defendant also then owned 46 head of livestock and one-half of whatever hay and grain there was on the 280-acre farm, but the value of such property cannot be definitely ascertained from the record.

At time of trial, defendant was 31 years old. He then claimed to have some disability in his back but he was able to work, and owned an undivided one-half interest in 129 head of livestock. He also owned 75 or 80 bushels of corn, 260 bales of alfalfa hay, his growing crops not yet harvested, and 2 life insurance policies. One such policy was for $5,000, payable to his parents, and one was for $2,500, payable to his estate. However, the value of the foregoing property cannot be definitely ascertained from the record. At time of trial, defendant also owned 10 pieces of described farm machinery and a car. Such items had been respectively purchased by him as follows: One in 1950; three in 1951; one in 1953; four in 1954; one in 1955; and one in 1956, at a

total cost of $5,187.60. Of course, defendant would be entitled to some depreciation on the value of such items, but not 50 percent or more, as claimed by defendant. Further, at time of trial, defendant had $41.70 in the bank, owned at least $500 of United States government bonds, and a television set worth about $50. As near as can be ascertained, defendant then had an indebtedness of $6,487.13 for taxes, for money borrowed from a bank, for back rent, for current obligations, for services of his attorneys, and for money claimed to be owing on his father's farm account.

True, defendant's farm crops had not been as bountiful as usual during 1955 and 1956, but his net income for 1955, figured on a cash basis, was some $1,100, and he deposited some $6,400 in the bank during 1956, although he claims that some of it was money borrowed from the bank. However, bearing in mind the substantial assets owned by defendant as heretofore set forth, it may be fairly concluded that defendant had a net worth of nearer $20,000 than of $13,752.48, as argued by defendant.

We are mindful also that when plaintiff was compelled to leave the farm in June 1956 she took nothing from their farm home but the meager clothing belonging to her. She also had no place to live or means of support for herself and child, whereas defendant not only had an income but also still had a furnished home where he lived alone, bought his groceries with cream checks, cooked some of his meals there, and ate the rest with his parents in Coleridge. On the other hand, plaintiff was later compelled to rent an inadequate furnished apartment for $45 a month, and she was unable to work as a domestic or baby sitter because she was compelled to care for a baby of her own. In that connection, the record discloses that plaintiff and her baby need more than $100 a month, which provides only a bare existence, much less proper living conditions, clothing, and food. Defendant owed the duty to maintain and sup-

port his child in a suitable manner, and likewise to so support plaintiff for at least the next 5 years until their child is old enough to attend school, and permit plaintiff to earn a livelihood, which is all that she has sought.

We conclude that defendant is amply able financially to meet those obligations and that he should be required to do so. Therefore, the judgment of the trial court should be and hereby is modified to award plaintiff $6,000 permanent alimony, payable $100 on the first day of August 1957, and $100 on the first of each and every month thereafter until paid in full. In all other respects, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant, including an allowance of $250 for the services of plaintiff's attorneys in this court.

AFFIRMED AS MODIFIED.

YEAGER and WENKE, JJ., participating on briefs.