FRED A. LOCKWOOD, APPELLANT· AND CROSS-APPELLEE, v.
CONNIE L. LOCKWOOD, APPELLEE AND CROSS-APPELLANT.
290 N. W. 2d 636
Filed April 1, 1980.   No. 42670.

Van Steenberg, Brower, Chaloupka, Mullin &
Holyoke, for appellant.

Wright & Simmons and John A. Selzer, for appel-
lee.

Heard before KRIVOSHA, C. J., BRODKEY and
HASTINGS, JJ., and FAHRNBRUCH and CLARK, District
Judges.

BRODKEY, J.

This matter involves an appeal by Fred A. Lock-

wood (Fred) and a cross-appeal by Connie L. Lockwood (Connie) from a decree entered by the District Court for Scotts Bluff County, Nebraska, dissolving the marriage of the parties; distributing the property of the marriage; and awarding child support, alimony, attorney's fees, and witness' fees. We affirm as modified.

The parties were married on September 3, 1961. The record does not indicate the amount of property which the parties possessed at the time they entered into this union. However, both parties attained postsecondary education degrees shortly before the marriage, Fred receiving a bachelor of science in business administration and Connie receiving a nursing certificate. Two children, Jon Thorval and Tracy Ann, were born as issue of the marriage on November 21, 1963, and December 29, 1969, respectively. The care and custody of these children were placed in Connie with reasonable rights of visitation to Fred, which award is not involved here.

During the marriage, the parties prospered financially. Some time in the early part of 1964, Fred began practicing as a certified public accountant. His practice grew over the years and he eventually became associated with a statewide accounting firm. Fred became a partner in that firm in July 1969 and remained a partner until January 1977, at which time he withdrew from the partnership and again started his own practice. Shortly thereafter, Fred formed a partnership with two other accountants. At the time of trial, his ownership interest in the partnership was 78 percent.

Connie does not appear to have contributed monetarily to the marriage to the extent that Fred did. She devoted her time to the task of being a mother, although she did work as a nurse early in the marriage and from the time the parties separated in 1978 until the time of trial.

Evidence with reference to the aforementioned background, as well as to the value of the various assets of the marital estate, was adduced at trial. The evidence presented was, in some respects, conflicting and such evidence as is necessary to resolve the assignments of error in this matter will be set out in the discussion of the respective assignments. On the basis of the evidence adduced, the trial court, in its decree, after dissolving the marriage and awarding custody of the children to Connie subject to rights of visitation, ordered Fred to pay child support in the amount of $300 per month per child until the child dies, marries, attains majority, or becomes self-supporting or until further order of the court; and to pay the medical, dental, and prescription eyeglass expenses of the children. The court also ordered that Fred should have all the property of the parties except the life insurance on Connie's life, the residence and the household goods and furnishings therein, and the 1974 Pontiac, all of which were assigned to Connie. The court ordered Fred to pay all the debts except those on Connie's life insurance policies and further ordered Fred to retain his ownership interests in the children's life insurance policies, to immediately pay the loans on them, not to borrow on them in the future, to pay the premiums thereon, and to assign the policies to the children when his support obligation terminates. The court also ordered that, in lieu of further division of property, Fred should pay to Connie $66,775 in 10 annual installments of $6,677.50, with interest at 8 percent per annum on the unpaid balance, payments to commence on May 1, 1979, and to continue on the first day of May of each year thereafter until paid, with the privilege to prepay the principal in whole or in part at any time. In addition, the court, in its decree, ordered that commencing April 1, 1979, and on the first day of each month thereafter for a total of 121 months, Fred shall pay Connie alimony through

the clerk of the court in the sum of $1,100 per month. The court also ordered Fred to pay the sum of $2,000 to apply upon Connie's attorney's fees and also to pay the costs of trial, including expert witness' fees in the sum of $1,100 for Connie's expert witness, George Blundell, an accountant, as well as appraiser's fees for Connie's appraiser in the sum of $275.

Fred has prosecuted this appeal from that decree, making two assignments of error in his brief: (1) That it was error to tax the accountant's and appraiser's fees as costs; and (2) that the total award to Connie and the children was excessive. Connie has cross-appealed, claiming: (1) That the trial court undervalued Fred's interest in an accounting partnership; (2) that the trial court undervalued Fred's stock in a certain closely-held corporation; (3) that the trial court should have ordered interest to be attached to any unpaid installment payments; and (4) that the further property division should have been made payable within 10 years. We first examine the errors raised in Fred's appeal.

Fred contends that the trial court erred in taxing Connie's accountant's and appraiser's fees as costs to Fred. It has long been the rule that a witness who testifies as an expert on a subject requiring special knowledge and skill is, in the absence of a contract for those services, entitled only to the statutory witness fee. See, Anderson v. State, 184 Neb. 467, 168 N. W. 2d 522 (1969); Hefti v. Hefti, 166 Neb. 181, 88 N. W. 2d 231 (1958); Peek v. Ayres Auto Supply, 155 Neb. 233, 51 N. W. 2d 387 (1952); § 33-139, R. R. S. 1943.

In this action, the accountant who was Connie's expert witness testified that the accounting firm of which he was a partner was employed by Connie to examine certain documents furnished to Connie by Fred in preparation for trial. These documents dealt with the financial status of the various marital assets and were, in large part, accepted as evi-

dence at trial. He testified that the documents were examined in preparation for the accountant's testimony as a witness in the dissolution proceedings and also testified as to the value of the services rendered. From this testimony, we conclude that there was a contract for those services and that the taxing of the accountant's fees in the amount of $1,100 as costs was proper.

The same may be said for the cost of the appraisal of the marital residence and of certain farm property. Section 42-367, R. R. S. 1943, provides, in part: "When dissolution of marriage or a legal separation is decreed, the court may decree costs against either party and award execution for the same, * * *." The fees for appraising the family residence and the farm property were taxed as costs in the amount of $275. While no oral testimony was adduced from the appraiser, it is clear that the person was under an obligation to Connie to use his expertise in valuing the house and the farm property. The appraisal reports received in evidence contained the amount of his charges. We reject Fred's first assignment of error.

Fred next contends that the total award to Connie and the children was excessive and therefore error. Fred apparently concedes that the provisions of the decree with reference to child support, alimony, and property distribution, when taken individually, are not unreasonable. However, it is his contention that when those three provisions are examined together, the total award becomes excessive and unreasonable. Section 42-365, R. R. S. 1943, provides, in part: "When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of

the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party." The fixing of alimony or distribution of property rests in the sound discretion of the District Court, and in the absence of an abuse of that discretion, will not be disturbed on appeal. Falcone v. Falcone, 204 Neb. 800, 285 N. W. 2d 694 (1979); Phillips v. Phillips, 200 Neb. 253, 263 N. W. 2d 447 (1978).

With the foregoing rules in mind, we now consider the reasonableness of the decree entered herein. It should be noted at the outset that the worksheet used by the trial court in determining the property distribution was given to the parties and is included in the record on appeal. The parties do not dispute the values placed on the various items, with the following exceptions: (1) The value of the accounting partnership; (2) the value of stock in a closely-held corporation; and (3) the value of Fred's interest in a family partnership owning certain farm land. We therefore limit our remarks to these items.

Fred contends that his interest in the accounting practice was valued in excess of its true worth by the trial court. Connie contends in her cross-appeal that his interest was undervalued. The value of the assets was determined as of December 31, 1977, a date not disputed by either party. Furthermore, the sole issue of dispute was the value of the goodwill of the practice. Fred and his expert witness both indicated that the goodwill of the practice would be in the $60,000 to $65,000 range. Connie's expert witness valued Fred's share of the goodwill of the practice (85 percent of the total) at between $284,257 and $361,913. The trial court valued the goodwill at $300,000. In Boroff v. Boroff, 204 Neb. 217, 281 N. W. 2d 760 (1979), we stated: "While in a divorce action the case is to be tried de novo, this court will give

weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of facts rather than the opposite. Patton v. Patton, 203 Neb. 638, 279 N. W. 2d 627 (1979). Obviously a trial court weighs the credibility of the witnesses and the evidence and determines what evidence should be given the greater weight in arriving at a factual determination on the merits. The testimony need not be accepted in its entirety and the trier of fact must use a commonsense approach and apply that common knowledge which is understood in the community.'' Our review of the evidence in this case convinces us that the determination of the trial court was reasonable, and that the valuation of the goodwill at $300,000 was appropriate.

Connie's cross-appeal on this issue must be considered in the same light. She contends that the value of the goodwill should have been placed at $330,000. However, the value assigned to the goodwill by the trial court was within the range to which Connie's own expert testified. From our review of the evidence, we conclude that the trial judge's decision in valuing the goodwill at $300,000 was reasonable and supported by the evidence. Connie's contention to the contrary is likewise without merit.

Connie next contends that Fred's interest in the accounting practice should have been placed at 90 percent instead of the 85 percent ownership which the trial court found. It is undisputed that Fred owned 85 percent of the accounting practice as of December 31, 1977, the date on which the valuation of all marital assets was based. Connie contends that Fred reduced his ownership interest in an attempt to place property beyond her reach. From a review of the record, we are not convinced that the erosion of Fred's ownership interest in the accounting practice was for a nefarious purpose. Indeed, it would appear to us that Fred diluted his interest for

sound business reasons. We therefore find no merit in Connie's contention.

Finally, Connie contends that Fred's capital account was undervalued by at least $10,000. We believe that this contention does have merit. The trial court valued Fred's capital account at $45,000 by adjusting his capital account as shown by the 1977 partnership tax return for his accounting practice. It should be noted that, during 1977, the accounting practice changed tax periods from a calendar year basis to a tax year beginning October 1. The trial court used the tax return for January 1, 1977, to September 30, 1977, and adjusted Fred's capital account to December 31, 1977, based on that 9-month period. Fred had a capital account of $54,722 on September 30, 1977. On September 30, 1978, Fred's capital account, as shown on the partnership tax return, was $71,058. It would seem that Fred's capital account was somewhere between these two amounts on December 31, 1977. The valuing of the capital account at $45,000 was therefore error. However, such error did not prejudice Connie in this action. At most, the result would be that Fred would receive more than Connie under the property settlement award entered by the trial court. Taking this difference into account, the award entered was clearly within guidelines previously announced by this court, approving an award of one-third to one-half of the marital estate. See, Baker v. Baker, 201 Neb. 409, 267 N. W. 2d 756 (1978), Grummert v. Grummert, 195 Neb. 148, 237 N. W. 2d 126 (1975); Kula v. Kula, 181 Neb. 531, 149 N. W. 2d 430 (1967). We therefore reject both Fred's and Connie's claims of error in the valuation of Fred's interest in the accounting practice.

Fred next contends that the valuation placed on the stock of the closely-held corporation was excessive. Conversely, Connie, in her cross-appeal, has contended that the valuation was too low. The trial court valued the stock at $50,000. From our review

of the record, we conclude that this value was reasonable. The value assigned to the stock by the trial court was clearly within the range of values to which the parties adduced evidence and we reject both Fred's and Connie's assignments of error on this issue.

Fred also contends that the property award was in error in the extent to which it determined his interest in a family partnership owning farmland. It is his contention that his ownership interest in the partnership was 25 percent instead of 50 percent as the trial court found. However, it is clear from the partnership tax returns that Fred owned a 50-percent interest on the December 31, 1977, valuation date. Furthermore, the value placed on the farm property by the trial court was clearly within the range of values which each party introduced into evidence at trial. We find no merit in this assignment of error.

Fred also contends that the award with reference to the amount of child support and the disposition of the insurance policies on the children's lives was inappropriate. "In determining the amount of child support to be paid by a parent, the court shall consider the earning capacity of each parent." § 42-364 (3), R. R. S. 1943. Other factors which may be considered include the status, character, and situation of the parties and attendant circumstances thereof. Brus v. Brus, 203 Neb. 161, 277 N. W. 2d 683 (1979). In this case, we do not believe that the award was inequitable. Fred is an accountant whose income was never less than $32,000 in the 4 years preceding this action. His income in the year just prior to this action was almost $50,000. In fact, the record reveals that, had he chosen to do so, his earnings could have been much greater for that year. Connie, on the other hand, was shown to have a much lower earning capacity. There is no question that Fred is the party more financially able to provide support for

the minor children. Moreover, the amount awarded was not beyond his ability to pay as shown by the evidence.

Fred also requests this court to eliminate the provisions in the decree with reference to certain life insurance policies on the lives of his children. These provisions require him to continue such policies in effect and, upon the termination of his liability for child support, to turn such policies over to the children. Although he admits that he has found no authority supporting his position in this regard, he points out that the provision in the divorce decree would require him to turn over a portion of his property to his children when they become adults. We agree with his contention in this regard. In 24 Am. Jur. 2d, Divorce and Separation, § 837, p. 949, it is stated: "A divorce court cannot award any part of the father's property to his children. He is obligated to support them, but not to settle an estate upon them. It has also been held that the statutory authority to award money for maintenance of a child does not include the power to require the husband to maintain life insurance for the benefit of a child, since life insurance does not provide food, clothing, housing, or any other necessary during the life of the husband." He admits that, had the insurance been on his life, rather than the lives of his children, it would have been proper for the court to require him to maintain the insurance policies or even take out additional insurance to insure the payment of child support in the event of his death. In this connection see Annotation, Divorce: Provision in decree that one party obtain or maintain life insurance for benefit of other party or child, 59 A.L.R. 3d 9. We believe that the decree should be modified to eliminate the provision with reference to the insurance policies on the children's lives, but wish to point out that it is still possible for the parties to attain that result by their joint agreement.

Finally, Fred contends that the award in its totality was inequitable, especially when compared to other cases reviewed by this court. In this connection, however, we have stated that the proper method of determining whether a trial court abused its discretion must be based on facts in the record and not from extrinsic criteria. Boroff v. Boroff, *supra.* We examine each case on its own facts to determine whether the total award is equitable. Moreover, alimony may be awarded in addition to a property settlement. § 42-366 (6), R. R. S. 1943; Magruder v. Magruder, 190 Neb. 573, 209 N. W. 2d 585 (1973); Baker v. Baker, *supra.* The record reveals that Fred's earning capacity will undoubtedly increase in the future. Connie, on the other hand, faces a limited earning potential. Given the attendant status and circumstances of the parties, we cannot conclude that the award in its totality was unreasonable. Therefore, we reject Fred's assignment of error to the contrary.

Having found no merit to any errors assigned by Fred in his appeal, we now turn our attention to the other errors assigned by Connie in her cross-appeal. She first contends that interest on the unpaid balance of the cash property settlement should have been awarded. We note that such award was made by the trial judge in his decree and we reject this assignment as lacking merit.

Finally, Connie contends that the trial court committed error in not ordering the property settlement installment payments to be completed in less than 10 years. She has cited no authority to show how or in what manner the length of the payment period would, in and of itself, create error. Her sole contention seems to be that the tax consequences of this award will result in Fred's receiving a disproportionate share of the marital assets. Again we note that, in these awards, exact division of the marital assets is impossible. We reject this claim on

the part of Connie.

Having examined the errors assigned by both parties herein, we conclude that the decree entered herein was reasonable and, except as modified herein, should not be disturbed by this court. The judgment is therefore affirmed as modified and Connie is awarded attorney's fees in the amount of $750 for services of her attorney in this court.

AFFIRMED AS MODIFIED.