IVAN KLIMENT AND ETHEL KLIMENT, HUSBAND AND WIFE, APPELLEES AND CROSS-APPELLANTS, V. NATIONAL FARMS, INC., A DELAWARE CORPORATION, DOING BUSINESS AS NATIONAL FARM PRODUCTS, AND O.N. CORPORATION, A NEBRASKA CORPORATION, APPELLANTS AND CROSS-APPELLEES.

514 N.W.2d 315

Filed April 8, 1994.   No. S-92-804.

David A. Domina, Cletus W. Blakeman, and James J. Kube, of Domina & Copple, P.C., for appellants.

Steven D. Burns and Jeffrey S. Schmidt, of Burns & Associates, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

HASTINGS, C.J.

Ivan Kliment and Ethel Kliment, husband and wife, brought this action against defendants, National Farms, Inc., and O.N. Corporation, seeking damages for a private nuisance because of the swine-raising activities of defendants. Following a jury trial which resulted in a verdict for plaintiffs in the amount of $13,000, defendants appealed. Because of the action of this court in affirming a case involving the same issues and these same defendants, *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994), defendants have dismissed their appeal. However, remaining is plaintiffs' cross-appeal, in which it is claimed the trial court erred in certain evidentiary rulings and in failing to award plaintiffs reimbursement for several items they claim to be legitimate costs. We affirm as to the cross-appeal.

The facts of this case are substantially the same as those in *Kopecky*. Here, plaintiffs attempted to introduce exhibits 14, 14A, 15, and 15A, which were reports made for defendants by L.M. Safely, Jr., as to waste-handling matters at the subject swine-raising facility. The reports were transmitted by Safely to defendants, which reports described the waste disposal system at this swine-raising facility as being significantly overloaded. Safely was not called as a witness by either defendants or plaintiffs. The offer of the exhibits by plaintiffs was rejected by the trial court upon defendants' objection as hearsay.

Plaintiffs contend that the exhibits should have been received under the provisions of Neb. Rev. Stat. § 27-801 (Reissue

1989), which provides:

> (4) A statement is not hearsay if:
>
> . . . [.]
>
> (b) The statement is offered against a party and is . . . (iii) a statement by a person authorized by him to make a statement concerning the subject, or (iv) a statement by his agent or servant within the scope of his agency or employment . . . .

Because Greg Gilsdorf, executive vice president of National Farms, testified that he had the authority to request Safely to make this report, plaintiffs argue that Safely was a person authorized by National Farms to make a statement concerning the subject or that his report was a statement by National Farms' agent or servant within the scope of his agency or employment. See § 27-801.

However, plaintiffs overlook two problems. Firstly, Gilsdorf was authorized to request the report, and Safely was requested to make the report. That is far different from making a statement on behalf of the principal or agent. Secondly, the report discusses the overloading of the waste disposal system which explains the objectionable odors, thus making out a case for liability of National Farms for maintaining a nuisance; an issue which the jury by its verdict determined favorably to plaintiffs. The report does not address the issue of damages.

Plaintiffs direct us to *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986), as a case, very similar to the present case, in which this court held that the statements of an insurance company's claims adjuster in advising the insured that his loss was covered were binding on the principal. In *Bump*, we said:

> The hallmarks of reliability and trustworthiness are more evident in a situation involving an insurance adjuster's vicarious admission than in the case of statements made by generic agents or employees. "An 'adjuster' or 'insurance adjuster' is a person, copartnership or corporation who undertakes to ascertain and report the actual loss to the subject-matter of insurance due to the hazard insured against." [Citation omitted.] As a result of its policy, an insurance company

has a contractual obligation to pay its insured's valid claim and, therefore, often dispatches one with special knowledge—the adjuster—to separate fact from fiction regarding a claim and obtain information to enable the insurance company to distinguish the valid claim from a claim for which the insurance company is not liable under its policy. Otherwise, an insurance company's sending an inept or incompetent adjuster, or one who is otherwise incapable of ascertaining and reporting a loss, spawns skepticism about good faith dealing with an insured—a specter the insurance industry has long labored to dispel. In the present case there is nothing to indicate that Johnson, acknowledged as Firemens' adjuster, was other than one qualified to ascertain the loss and attendant circumstances on which Bumps' claim was based.

*Id.* at 686-87, 380 N.W.2d at 275. This court went on to state:

Unquestionably, communication with an insured is a vital and integral part of services rendered by an insurance adjuster for validation or rejection of an insured's claim against the insuring company. Such communication constitutes a statement within the scope of an adjuster's agency or employment by the insurance company. We, therefore, hold that the adjuster's statement made to Brenda Bump concerning insurance coverage supplied by Firemens' policy was admissible under [Neb. Evid. R.] 801(4)(b)(iv). Because the statement contained evidence bearing upon the issue of causation for the loss claimed by Bumps, the adjuster's statement was relevant. See Neb. Evid. R. 401.

221 Neb. at 688, 380 N.W.2d at 275-76.

Here, unlike the situation in *Bump*, there is nothing to suggest that Safely was employed for any purpose other than to give technical advice to National Farms. Safely's employment or agency did not include making statements on behalf of National Farms. Plaintiffs could have called Safely to testify at trial, but his report under these circumstances is hearsay and not subject to any of the exceptions.

We adopt the rule laid down in *United States v. United Shoe Machinery Corporation*, 89 F. Supp. 349, 352 (D. Mass. 1950):

> Where the agent makes a report to the principal or to another agent, and all that appears is that the principal had authorized the agent to make such a report, a statement in the report is not the principal's and is not an extrajudicial admission of the principal. . . . Authority merely to report to a principal or a fellow agent is not authority to commit the principal.

(Emphasis omitted.)

Furthermore, the information imparted by Safely went to the issue of liability for a nuisance, not the damages incurred. Plaintiffs were successful on the issue of liability, and therefore, any error that might have been committed because of the rejection by the trial court of Safely's report is at best harmless error.

Plaintiffs attempted to recover for their costs incurred, which included costs of expert witnesses and expenses of their attorneys in attending on the depositions of various witnesses. Plaintiffs point to Neb. Rev. Stat. § 25-1708 (Reissue 1989), which provides: "Where it is not otherwise provided by this and other statutes, costs shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific real or personal property."

This court has held that " 'nothing can be taxed as costs in an action except such items as are prescribed by those statutes or are expressly authorized by the consent or agreement of the parties.' " *State v. Jungclaus*, 176 Neb. 641, 650, 126 N.W.2d 858, 864 (1964). We have been directed to no statutes or case law, nor have we been able to find any, which define costs to include travel, meals, lodging, fees to attorneys or witnesses, or the expenses of making extra copies of depositions or of enlarging exhibits. An obvious exception, of course, is Neb. Rev. Stat. § 76-720 (Reissue 1990), which provides in part:

> If an appeal is taken from the award of the appraisers by the condemnee and the amount of the final judgment is greater by fifteen percent than the amount of the award, or if appeal is taken by the condemner and the amount of the final judgment is not less than eighty-five percent of the award, or if appeal is taken by both parties and the

final judgment is greater in any amount than the award, the court may in its discretion award to the condemnee a reasonable sum for the fees of his or her attorney and for fees necessarily incurred for not more than two expert witnesses.

Plaintiffs direct us to *Lockwood v. Lockwood*, 205 Neb. 818, 290 N.W.2d 636 (1980), as authority for their proposition that the fees paid to an expert witness may be taxed as costs. However, in that case, we stated: "It has long been the rule that a witness who testifies as an expert on a subject requiring special knowledge and skill is, in the absence of a contract for those services, entitled only to the statutory witness fee." *Id*. at 821, 290 N.W.2d at 639. The court went on to say:

In this action, the accountant who was Connie's expert witness testified that the accounting firm of which he was a partner was employed by Connie to examine certain documents furnished to Connie by Fred in preparation for trial. These documents dealt with the financial status of the various marital assets and were, in large part, accepted as evidence at trial. He testified that the documents were examined in preparation for the accountant's testimony as a witness in the dissolution proceedings and also testified as to the value of the services rendered. From this testimony, we conclude that there was a contract for those services and that the taxing of the accountant's fees in the amount of $1,100 as costs was proper.

The same may be said for the cost of the appraisal of the marital residence and of certain farm property. Section 42-367, R. R. S. 1943, provides in part: "When dissolution of marriage or a legal separation is decreed, the court may decree costs against either party and award execution for the same . . . ."

205 Neb. at 821-22, 290 N.W.2d at 639.

In the case at hand, the only evidence of a contract of hire is the following testimony of the expert witness, Leon Chesnin:

Q. Doctor, you indicated that on occasion you, in your professional career now, do testify in the courtroom as you are doing today.

A. Yes.

Q. For both plaintiffs and defendants or one side or the other.

A. Both sides. Whoever hires me first, that is the way it works, and I don't work for the plaintiff or the defendant. I work for the attorney that contracts my services.

Q. And you are here today at the request of myself, is that right?

A. That's correct.

Q. And you are being paid for your services?

A. Hopefully.

There was no testimony by the witness as to the value of his services. The only other reference to witness fees is found in the supplemental transcript, in a portion of the bill of costs submitted by plaintiffs, which simply reads, "8. Expert Witness Fees $14,545.59."

The most recent citation of *Lockwood* may be found in *Vredeveld v. Clark*, 244 Neb. 46, 57, 504 N.W.2d 292, 300 (1993), a tort action for damages resulting from an automobile accident, in which we said:

Plaintiff assigns as error the trial court's failure to assess the costs of the expert witnesses to defendant.

In *Hefti v. Hefti*, 166 Neb. 181, 88 N.W.2d 231 (1958), this court stated that expert witness fees could be taxed above the statutory fee where a special contract existed. In *Lockwood v. Lockwood*, 205 Neb. 818, 290 N.W.2d 636 (1980), this court upheld the taxing of expert witness fees to the husband in a divorce action. It found evidence of a contract where the expert testified he had been employed by the wife to examine certain financial documents furnished to the wife by the husband in preparation for the trial, he had testified to the value of his services, and these documents and the expert's testimony were accepted into evidence at trial. In *Hefti* and *Lockwood*, costs for expert witness fees were permitted pursuant to Neb. Rev. Stat. § 42-367 (Reissue 1988) and its predecessor, which permit a court to direct costs against either party involved in a divorce action. These cases are thus distinguishable from the present case. The court did not err in refusing to tax expert witness fees to defendant.

As is apparent, we have further limited the rule announced in *Lockwood* to be applicable only to similar cases in which the special statutory provisions exist.

Applying the reasoning of the foregoing authorities to the record before us, we find that the trial court did not err in refusing to award expert witness costs to plaintiffs or in failing to award costs for attorney fees, expenses of litigation, and expenses for making additional copies of depositions or enlargements of exhibits.

The judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH, J., concurs in the result.