IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CASEMENT V. CASEMENT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHAEL CASEMENT, APPELLANT,

V.

JAMEE CASEMENT, APPELLEE.

Filed August 27, 2024.    No. A-23-753.

Appeal from the District Court for Lancaster County: MATTHEW O. MELLOR, Judge. Affirmed in part, and in part reversed and remanded with directions.

Trevin H. Preble, of Preble Law Firm, P.C., L.L.O., for appellant.

Nicholas R. Glasz and William R. Taylor, of Glasz Law, for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Michael Casement appeals from the Lancaster County District Court's order dissolving his marriage to Jamee Casement. He contends that the district court erred in determining the valuation date of the parties' marital home and in valuing the parties' business. For the reasons stated herein, we affirm in part, and in part reverse and remand with directions.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

Michael and Jamee were married in 1996. Although the parties had children during the marriage, because there are no issues presented in this appeal regarding custody, visitation, or child support, the children will not be discussed unless necessary for resolution of other issues.

In 2008, the parties purchased a plumbing and sewer repair business from Michael's father called Casement Trenching, LLC, that they operated as an S-Corporation. During the marriage, Michael did all of the fieldwork while Jamee served as the business' office manager.

## 2. COMPLAINT AND TEMPORARY ORDER

In March 2021, Michael filed a complaint to dissolve the parties' marriage. Because the only issues relevant to this appeal involve the parties' marital home and the business, we limit the facts to those issues. In June, the district court entered a temporary order which, inter alia, provided the following regarding the parties' finances and business:

6. [Jamee] shall be the primary custodian of the parties' joint finances, including but not limited to any and all accounts of Casement Trenching, LLC. She shall continue to have the full right to withdraw, deposit and otherwise manage all account(s) funds as she has done in the past;

7. All revenue generated by Casement Trenching, LLC, shall be immediately deposited into the account(s) of Casement Trenching, LLC wherein [Jamee] is and shall be maintained as an owner and signatory and have all rights and privileges associated with said account;

8. [Michael] shall not tortiously interfere with the operations of Casement Trenching, LLC in any manner, including but not limited to, performing any "off-book" or moonlighting work;

9. [Jamee] shall pay all reoccurring monthly expenses of the parties utilizing the accounts of Casement Trenching, LLC, Said payments shall include, but not be limited to: mortgage payments, rent payments, credit card payments, utilities, auto loans, insurance premiums, and medical expenses in the same manner as she has done in the past;

10. That each party shall receive up to $3,000.00 every month, as living expenses to spend as they see fit, after all reoccurring monthly bills are paid. Said sums shall be paid utilizing the account(s) of Casement Trenching, LLC. In the event there is not sufficient funds to pay the parties on the first of every month, [Jamee] shall ensure that each party is paid in equal installments up to $3000.00 per month. In the event that [Michael] requires money for the month, Defendant shall not unreasonably withhold said funds.

11. [Jamee] shall be solely in charge of the Casement LLC bank accounts and shall be the only person allowed to withdraw funds from said accounts unless mutually agreed to in writing between the parties or until further order of the court.

## 3. TRIAL

The trial was held in May 2023. The following is a summary of the evidence adduced related to the value of the marital home and the value of Casement Trenching.

### (a) Valuation of Marital Home

The evidence established that the parties purchased the marital home in 2008 for $205,000. Neither party obtained an appraisal for the marital home. Although Michael admitted that he

valued the home at $475,000 in his interrogatories, during his trial testimony he stated that he believed the marital home was worth $500,000 to $550,000. He based this valuation on a recent sale of a neighbor's house and a 2023 preliminary assessment issued by the county in the amount of $513,000. Jamee, on the other hand, valued the marital home at $344,000 in her proposed property distribution but when asked by her attorney whether it was accurate that "[a]s a feature of our distribution of the marital estate, you have listed the value of the marital home at 400,000," Jamee responded, "Yes."

Michael requested that the court order the sale of the marital home, use the proceeds to pay marital debt, and divide any remaining proceeds equally between the parties. Jamee, on the other hand, requested that the court award her the marital home at a value of $344,000 which she based upon the home's 2022 assessed value.

### (b) Valuation of Business

The parties further disagreed on the value of the business. During the trial, Michael offered, and the court received, an appraisal from Greg Ford on the value of the assets owned by Casement Trenching on March 4, 2023, which appraised the equipment at $288,575. Michael asserted that the value of the business should be based upon the value of the business' assets.

Although Jamee agreed that the physical assets of the business were worth $288,575, she argued that the value of the business should be based on its historical revenue and goodwill. She testified that "I have used common formulas that are industry standards in valuing a company. I have gotten several different valuations. The most conservative valuation was [$]675[,000]. And the most, I don't know, favorable was between 1 million and 1.2 million." Jamee requested that the court value the business based on the business' highest gross revenue.

Barbara Burr, a tax preparer, testified that she prepared and filed the Casements' personal and business tax returns for the last 15 years. Burr testified that Casement Trenching's 2018, 2020, and 2021 tax returns reflected the business' gross receipts or sales as follows: $353,864 for 2018; $286,413 for 2020; and $332,900 for 2021.

Neither Ford nor Burr offered an opinion of the proper methodology to value Casement Trenching.

### 4. DISSOLUTION DECREE

In August 2023, the district court entered a decree which, inter alia, dissolved the parties' marriage and determined that the parties' assets and debts "shall be valued at the time of the filing of the Complaint in this captioned matter in March 2021." The court awarded Jamee her vehicle and the marital home subject to the corresponding debt consisting of the mortgage and second mortgage which she was required to refinance and, if unable to do so, the property was ordered to be sold.

The court awarded Michael

sole interest in Casement Trenching, LLC, and its property and assets free and clear of any interest of [Jamee]. [Michael] shall be subject to all of the debt associated with Casement Trenching, LLC, which includes but is not limited to CAT Card, CAT Financial, any and all SBA Loans, and any operating LOC's. Casement Trenching LLC is valued at $332,900

as shown in Exhibit 4. [Jamee] shall transfer any and all interest in Casement Trenching, LLC to [Michael] within thirty (30) days of this Decree.

The court also ordered that each party was responsible for 50 percent of accrued debt owed to the IRS and marital debt contained on credit cards reflected in exhibit 17. Finally, the court ordered Michael to pay Jamee an equalization payment of $26,904.64, although the decree does not contain a computation of how the court arrived at that amount.

Michael has now timely appealed from the district court's dissolution decree.

## III. ASSIGNMENTS OF ERROR

Michael assigns that the district court abused its discretion by (1) valuing the marital home as of the date of the filing of the complaint and (2) valuing Casement Trenching in an amount contrary to the evidence at trial.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

Before considering the merits of Michael's assigned errors, we briefly summarize the standard for dividing a marital estate.

Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Id.* There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id.*

In a marital dissolution action, the equitable division of property is a three-step process. *Id.* The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to

the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* And the third step is to calculate and divide the net marital estate equitably between the parties. *Id.*

## 1. VALUATION DATE OF MARITAL HOME

Michael's first assignment of error falls within the second step of the three-step framework for the division of property. Michael contends that the district court erred in valuing the parties' marital home as of the date of the complaint for dissolution as opposed to the date of the decree, since the district court's temporary order "co-mingled" the parties' finances and, as a result, the parties were not financially separated until the entry of the dissolution decree. Brief for appellant at 6.

In *Radmanesh v. Radmanesh*, 315 Neb. 393, 407, 996 N.W.2d 592, 604 (2023):

The purpose of assigning a date of valuation in a dissolution decree is to ensure that the marital estate is equitably divided. It is well settled that, generally, the date upon which a marital estate is valued must be rationally related to the property composing the marital estate and the property being divided. We have declined to tie the hands of the district court and mandate that it must use only one particular valuation date in equitably dividing the marital estate. The date of valuation is reviewed for an abuse of the trial court's discretion.

In its decree, the district court stated that it valued the parties' property as of March 2021, which was the date that the complaint for dissolution was filed. Michael argues that the $344,700 value of the marital home in March 2021 was significantly lower than its value at the time of the May 2023 trial which, according to the county's 2023 preliminary valuation, was $513,000. Michael also argues that the district court utilized specific debts from exhibit 17 to value debts which were valued at or near the time of trial as opposed to the March 2021 date.

Here, since neither party provided the court with an appraisal of the marital home, the district court was forced to choose the value of the home based on the limited evidence of value adduced at trial. The district court accepted the 2021 assessed value at the time of the March 2021 filing of the complaint. Although the court indicated that it valued the marital home and its associated mortgages as of the March 2021 filing of the complaint, we note that neither party offered evidence of the balances of the first and second mortgages as of that date. Instead, Michael offered evidence of mortgage balances as of August 1, 2022, and Jamee offered evidence the mortgage balances as of May 2023. As such, the court appeared to provide Jamee with the home valued as of 2021 while requiring her to be responsible for its associated debt valued as of a later date. That issue is significant because, as Michael argues, the court's temporary order required Michael to continue working at Casement during the pendency of the dissolution proceedings and required Jamee to pay from Casement's earnings all debts, including the mortgages, which lowered the amounts of the mortgages by the time that the trial was held in May 2023. This reduction in debt, through Michael's efforts, benefited Jamee while not affording Michael the appreciation in value of the martial home over that same time period. When considered with the fact that Jamee herself agreed that the home was worth $400,000, as compared to Michael's pretrial attestation

that he believed the home was worth $475,000, we find the court abused its discretion in valuing the property at its 2021 assessed value.

Because neither party offered an expert's valuation at trial, we value the marital property at $437,500 which is midway between the values assigned by Michael and Jamee. And because the court did not separately provide a calculation associated with Michael's equalization payment, we remand the matter to the district court to recalculate that payment while using a $437,500 valuation rather than the 2021 assessment which more fairly reflects the valuation as of the time of trial.

## 2. VALUATION OF CASEMENT TRENCHING

Michael next assigns that the district court abused its discretion in valuing Casement Trenching at an amount contrary to the evidence presented at trial. Specifically, he argues that the district court valued Casement Trenching based on the 2021 tax return entered into evidence as opposed to the valuation given by the appraiser.

To determine the value of a closely held corporation, the trial court may consider the nature of the business, the corporation's fixed and liquid assets at the actual or book value, the corporation's net worth, marketability of the shares, past earnings or losses, and future earning capacity. *Else v. Else*, 5 Neb. App. 319, 558 N.W.2d 594 (1997). The method of valuation used for a closely held corporation must have an acceptable basis in fact and principle. *Id*.

This court in *Logan v. Logan*, 22 Neb. App. 667, 675, 859 N.W.2d 886, 895 (2015) stated:

> In reviewing challenges to the valuation in dissolution proceedings of the interest in a business, the Nebraska Supreme Court has recognized that while in a divorce action the case is reviewed on appeal de novo, the appellate court will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. See *Lockwood v. Lockwood*, 205 Neb. 818, 290 N.W.2d 636 (1980). Obviously, a trial court weighs the credibility of the witnesses and the evidence and determines what evidence should be given the greater weight in arriving at a factual determination on the merits. *Lockwood v. Lockwood, supra*. The testimony need not be accepted in its entirety and the trier of fact must use a commonsense approach and apply that common knowledge which is understood in the community. *Id.*

In *Logan v. Logan, supra*, we found that although the district court's valuation did not reflect the adoption of a specific value testified by either party, the evidence adduced at trial supported the district court's determination of the value.

Here, in its order, the district court stated:

> [Michael] shall be awarded sole interest in Casement Trenching, LLC, and its property and assets free and clear of any interest of [Jamee]. [Michael] shall be subject to all of the debt associated with Casement Trenching, LLC, which includes but is not limited to CAT Card, CAT Financial, any and all SBA Loans, and any operating LOC's. Casement Trenching LLC is valued at $332,900 as shown in Exhibit 4. [Jamee] shall transfer any and all interest in Casement Trenching, LLC to [Michael] within thirty (30) days of this Decree.

During the trial, the parties disagreed on the value of the business, but did not provide expert testimony as to the proper methodology to value a business in that industry. Instead, Michael offered a valuation of the business's physical assets at $288,575; however, that asset valuation did not include any indication that a business of this nature is properly valued on the basis of its assets. Jamee likewise failed to provide expert testimony on the subject, but indicated her independent research determined that businesses of this type are valued as a component of their gross annual revenue. She then argued that the business should be valued at 2 to 4 times its gross revenue. The district court did not accept either party's value but adopted Jamee's valuation methodology albeit only assessing the business' worth at 1 times gross revenue obtained from its 2021 tax return. In short, the district court found that the testimony that the business had more value than its physical assets to be more credible than Michael's asset valuation. Because no party provided an expert's opinion on the proper methodology to value the parties' business while taking into account that the district court heard and observed the testimony, we find no abuse of discretion in the court's valuation of Casement Trenching at 1 times its gross revenue.

## VI. CONCLUSION

For the reasons stated above, we affirm the district court's determination of the value of Casement Trenching but reverse that part of the court's decree valuing the marital home at $344,000, and remand for the court to recalculate the equalization payment using $437,500 as the value of the marital home.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.